The next case is going to be done in part by phone. This is the United States Court of Appeals for the Federal Circuit seeking Mr. Clipstein, please. Thank you, my mama, please. Thank you. Good morning, Mr. Clipstein. Hello, Mr. Clipstein? Sir. Can you hear me? I can hear you. Apparently, you can't hear me. I'm a little concerned about my time. I can hear you. You have before you Presiding Judge Wallet, Judge Shin, and Judge Hughes. Thank you, sir. Thank you. Mr. Clipstein, you have listed you want five minutes and then ten for response. Is that correct? Yes, Your Honor. When the court asked me, of course, I was just guessing. Well, your five minutes are starting to run, so go ahead. Your Honor, if it's all right with the court, I'd like to adjust that to perhaps seven minutes and eight. That's fine with me. Thank you, sir. Because I have a longstanding distrust of speaker phones, I'd like to ask if everyone can hear me all right. Well, we can hear you. Great. Thank you. A small step for telephony and a great step for the federal judiciary. Your time's running. Thank you, Your Honor. May it please the court. My name is Matthew Clipstein. I'm counsel on appeal for the plaintiff and appellant in this case, Neural Repair Incorporated. I thank the court for its accommodation of my physical disabilities by allowing me to appear telephonically. Some five years ago on March 20, 2009, Neural Repair filed an appeal to the court for a unremarkable plain vanilla complaint stating only state law causes of action for legal malpractice, breach of fiduciary duty, and fraud in the California Superior Court in and for the county of San Diego. Mr. Clipstein, in page 54 of the blue brief, you say that the appellees hid in wait for three years before arguing that Neural Repair lacked standing. And they responded, page 34 of their brief, that they raised lack of standing at least as early as May of 2009, and indeed the record appears at 118 in Volume 1 to reference standing on that date. Is that reference in 2009 somehow deficient? Yes, Your Honor. I have no doubt that the defendants raised standing as an affirmative defense among their 27 affirmative defenses in their answer. But not one of their affirmative defenses was properly treated pursuant to Rule 8 or under the Supreme Court's plausibility guidance in Twombly or Iqbal. Every single one of their affirmative defenses simply means an affirmative defense without giving any supporting factual allegations at all. And when I have a chance, I'll grab the record and take a look at that. Unless the court has any further questions about that now that I can ask, sir. Go ahead. You've got four and a half minutes left. The grand minimum of the complaints filed against the NAPS group and one of its employees, attorney Robert Kogan, was that after two years of ostensibly working on certain patent prosecutions for Neural Repair and $200,000 in legal fees, defendants had made no progress toward the goal of obtaining U.S. patents on a remarkable biotech invention originally developed at the University of California. That invention by renowned neuroscientist James H. Fallon can physically repair damage to an injured or diseased brain and restore lost function. The complaint may be found in the record at page 57. Defendants removed the case to the Southern District of California on May 7, 2009. The notice of removal states a single ground for removal. This court's opinion in error measurement technology is versus Aiken. The notice of removal is on the record at page 54. Error measurement, of course, was not at all considered by the Supreme Court, but the central holding of that case... I'm sorry, Your Honor, was there something that... No, go ahead. You'll hear us. You'll hear us. Great, thank you. The central holding of error measurement is that a state legal malpractice action stemming from patent litigation or prosecution is a matter of federal jurisdiction as arising under an act of Congress relating to patents was overruled by the Supreme Court in Gunn v. Minton at 133 Supreme Court 1059 in 2013. There is one essential question, threshold question, before this court. It is perhaps the most fundamental issue in federal jurisprudence. Because the federal courts are courts of limited jurisdiction, it is the question every federal court must ask itself at the outset of every case, whether the court has subject matter jurisdiction. While defendants would wish it to be otherwise, every one of the many underlying substantive issues they attempt to raise is a mere red herring. Without jurisdiction of courts, this court will not reach the substantive question of this case. Well, even if it's not a red herring, it may be a question of state law. Well, Your Honor, my point is I believe that there are issues that both the district court and this court lack jurisdiction to address. And certainly without jurisdiction, you don't even want to address them. Well, isn't your court question really whether there's a patent issue that's so wrapped up in the malpractice that it would have to be considered by a court with particular expertise in patent law? I think not, Your Honor. But the Chief Justice, who is, I think, rightly renowned for being very careful with his language, was very careful about that point. And what he said was, in fact, it's really the only distinction between the Supreme Court's decision in Gunn and this court's decision in error measurement, which was largely adopted by the Supreme Court in Gunn. There's really only one distinction. And that was that the Supreme Court said, and I quote, something more. Demonstrating that the question is significant to the federal system as a whole is needed. The court found that to be missing in Gunn, and it is missing here. So it is not enough to say that there's a question of patent law that will affect the patents or the parties in this case. Or a question of patent law that may require some sort of special expertise in patent law to determine it. Mr. Clipstein? Yes, sir. Your opposing counsel is going to be standing up in a couple minutes saying that there is a substantial federal interest here to be resolved. And it should be resolved in federal district court because their defense to the malpractice claim is that your patent is invalid. And that's a question that needs to be resolved in federal court rather than state court. What's your response to that? With due respect, Your Honor, to both the court and the opposing counsel, I would say that that argument is obviously detractor. It's deficient. That completely ignores the well-conceived complaint rule. And this is the very purpose of that rule. A defendant cannot create federal jurisdiction by raising a federal question in a defense. If the federal question is not apparent from the face of the complaint, then for purposes of jurisdiction, there is no federal question. Thank you. Mr. Clipstein, you're eating into your response time, which of course you can do. But just be aware of it. I'm happy to do that, Your Honor. I do want to make sure that the initial points are made adequately for the courts so that we can get into whatever questions the court has. Your Honor, not to get personal, but as a young, freshly minted law school graduate fortunate enough to clerk for an Article III judge, I learned that it is rarely wise to tell an Article III judge that he or she may not do something or must do something else. That's just not a smart thing to say because it's never been done before. It's never true. But having said that, this case is clearly controlled by gun, and the clear dictates of gun leave this court only one course of action. Pursuant to the Supreme Court's unanimous decision, neither the district court below nor even this court has subject matter jurisdiction over the substantive issues in this case, and it must be remanded to the state court from which it was removed. The district court must be reversed for having acted without jurisdiction, and for that reason every decision, opinion, ruling, and judgment of the district court must be vacated and ruled void. In their opposition, defendants make several strange and demonstrably wrong arguments attempting to distinguish or otherwise circumvent God. And Your Honor's question is an example of one of those strange arguments, that defendants could raise a federal issue in defense. I can address those now or wait until rebuttal, whatever is the court's pleasure. Well, it's up to you. You've got 4.49 now, and the clock's ticking. Well, Your Honor, I'm really most comfortable doing this however the court would please. Well, we'll hear from the other side then. You've got 4.5 minutes. Excellent. Thank you, Your Honor. I'm not talking to you, Mr. Clipstein. Speak loudly, counsel. Make sure that Mr. Clipstein can hear you. Thank you, Your Honor. Mr. Clipstein, are you able to hear me? Yes. Thank you. Excellent. May it please the court. My name is Gregor Hensrud. I represent the appellees, the NAF group, and Robert Kogan. We need to take a brief step back here to look at the case before we take a look at why the gun issue is inapplicable. I'd like to make one other point with respect to the standing issue they brought up as well. Those are the only two points that are really necessary. But the first thing we need to know is that the patent prosecution starts long before my clients are involved. It takes many, many years, 31 rejections overall. Do you think that's the core? I would think the core would be NeuroRepair's assertion at page 13 of its reply brief that defendants committed fraud by failing to disclose certain facts such as Kogan's malfeasance and his unwillingness to turn the matter over to another attorney even when he was instructed to do so by his managing partner, close quote. There's an awful lot of stuff in there, in the record, including a devastating email which says, look, if you don't turn this, I've told, from his supervisor, saying I've told you to turn this over, if you don't turn this over right now, I'm going to come in and take it away from you physically. How do you respond to that? Yes, I don't think that's the core at all, but I'll respond to the issue. It sounds like malpractice action. Well, I mean, surely it was malpractice action in addition to the other causes of action as you pointed out. That email by Mr. Epstein never became an issue in this action because we won on other grounds without ever addressing breach. But it's important. And the reason is Mr. Epstein subsequently in his deposition made very clear that he didn't respond to the email that is in the record from Mr. Clipstein, which essentially says the same thing. I've spent $200,000 and gotten nothing. And Mr. Epstein later apologized for that and said I shouldn't have jumped in before I did all of the review. But be that as it may, this all happened long after any of the allegations that are supposedly malpractice in this case. But I think that the key to the issues that are raised here was one more of causation as opposed to breach. And that, I think, is where we get into the federal question kind of issue that's present here. I've got a quick question to follow up with Judge Wallach. Did the Nath Law Group prepare and file the patent applications? No. They kind of came in sort of midstream. Yeah, they were third of six, I believe. And did Nath Law Group collect $200,000 in fees? I don't know the exact number, but it's not far off. For doing what? If they didn't file the patent application. All of the office actions that they responded to, overcoming rejections on three different patents. They also were doing other work for him on a licensing issue that you saw addressed in there. And they were also doing work for him on a different patent application. But as between all of those, I think that is approximately the same fees. They didn't actually file them, but they prosecuted them for the course of a couple years. A couple years of prosecution, $200,000 grand.  I don't want to get too specific because I didn't brush up on that right now. But it was approximately that. The other work accounted for the remainder of the money that's at issue. All right. Gunn versus Minton. Yes. Chief Justice Roberts says it will rarely, if ever, be appropriate to hear a state law malpractice claim in federal court and to conclude that it arises under the patent law. Yeah. First, we're in rarely land. But second, I think that the more... We're in what? Rarely land. How is it rarely? I mean, your position, if we accept it, drives a big hole into Gunn, doesn't it? If there's still any patent in prosecution that could be affected by the decision, then you're saying it has to come to federal court. But you're asking us to create an awful big exception to Gunn when, as my colleague noted, the Supreme Court was very clear that these actions belong in state court. Yes, Your Honor. And I think there is... I would say it's consistent with Gunn. But if you take Gunn as the principle that none of them are, there is a hole there. No question. But I think this court's already answered that a couple weeks ago with Jang. I think the Jang decision is on all fours. It's not a malpractice claim, though. It is. And Chief Justice Roberts was talking about malpractice claims. Sure. But the distinction here is nil. I mean, to say it's a state law claim based on a contract and a state law claim based on malpractice, to say that the only difference is because... Well, the only difference is the Supreme Court has told us to send the state law malpractice claims to state court. And they seem to think that state courts are uniquely situated to deal with alleged allegations of misconduct by members of their bar. There is a state interest there? No question. There's a state interest in contracts as well, though.  I don't think... I mean, if you read the decision, the position is not the state interest. It's the substantiality of the federal interest. I mean, even if you look at the cases that they, I'll say, reviewed, Immunicep and Air Measurement, those were not, neither of those were patents pending at the time. The former was a litigation case, and the latter was a patent prosecution that had already happened. So in both cases, I think Jang uses the same language. It's backward looking. If you look at what Minton said, or what Gunn says, it says that whatever happens, Minton's patent remains invalid. Right? What happened is they had a trial to determine whether or not it was invalid. It was determined invalid. Then it went over here. They had a legal malpractice action to determine whether or not there was something that could have gotten a better result. But that's never going to affect this. And that's the distinction. And that's what they say. Don't you think if the Supreme Court had thought there was a distinction that you're making between the backward looking and the forward looking, that they would have used some language other than these cases rarely, if ever, belong in federal court? Well, I'd say a couple things, Your Honor. I mean, number one, obviously, the court can't decide what's not in profit. So I'm confident the Supreme Court tries to think through the permutation before they make pronouncements. But to actually see all of them is a different story. And every other ones that were looked at, everything that they were looking at to see what might happen, Immunicept, error measurement, and Gunn, were all backward looking. And they focused on the backward looking. And then this court in Jang discusses the difference, that the court may be called upon to determine the extent to which validity is made relevant to the resolution of the contract itself. Why isn't this one backward looking? We're trying to figure out whether your client committed malpractice. But the issue is, and this is where I took issue. You said exactly, Judge Shen, what I was going to say with one caveat. When you pronounced what I would like to come up and talk about. The caveat was, you said that my defense would relate to the past. And that's not accurate. The actual issue here is one of the elements of the tort of malpractice, which is causation. So they must show that they would have achieved a better result in the patent prosecution, but for my client. And what we do in these legal malpractice cases all the time, is make a legal argument, no you wouldn't. So the legal argument we made below, and actually had to get taken off calendar, because the USPTO acted first, was that the patent was not issuable, allowable, is probably the more accurate term. Because the reasons given in the USPTO's last rejection were correct as a matter of law. If the district court had accepted that position, we win. And that's an element, that's not my defense. They must prove causation. And this court dealt with the same issue in the Davis case in 2010. But how is that deciding an issue of federal law? That's a state court looking at a causation element and saying, they wouldn't have gotten better results, but for your malpractice. The issue is that they have to decide whether or not this is patentable. Is this or is this not patentable malpractice? Before, or I'm sorry, patentable. Is this a not patentable technology? To begin, we acknowledge that resolution of a federal patent question is necessary to Minton's case. Absolutely.  Are you saying somehow that the problem is that if the state court said, this isn't patentable, that that would somehow be binding on the PTO or the federal government or the federal courts somehow? It's part of one of the problems, Your Honor. But it's clearly not binding. Well, I think the guns suggest that maybe we don't really know what would happen in that kind of situation. A gun somewhere said federal courts are not bound by state law rulings. State law pronouncements. For sure. But might a party at some point then be bound because they were there? The same party that was involved in it? Suppose we disagree with you that the PTO or a court somewhere would be bound. Then it doesn't matter that the state court is looking at this as an element of causation and deciding it would or wouldn't have been patentable. I think it does. I agree with both of your precepts. I think the USPTO probably isn't involved, isn't bound, and the federal court probably wouldn't be bound. But I think the party is bound. If neural repair went in there and it was determined that there was invalidity or even infringement in a state court action, when they go to enforce patent law. How are they bound? All the collateral estoppel elements are met. They were there. They had the opportunity to argue validity. The PTO has to give collateral estoppel effect to a state court judgment? The PTO does not, but a subsequent court would. Subsequent federal court? Perhaps, actually. Where's your authority for that? It's a collateral estoppel issue. Are you aware of collateral estoppel cases where the federal courts give collateral estoppel to a state court judgment? Yes. For a patent? I don't think there is a patent one because obviously all the patent law until then was held otherwise. It was in federal court because of 1338. But clearly federal courts give effect to state court decisions if the parties were there, they had an opportunity to be heard and otherwise. But I think even if we jettison the bound part, the big issue that we have here is the inconsistency of it all. What is someone who, we see all this evidence about arguing for the creation of the CAFC. Well said, Your Honor. But at any rate, that I think is the issue. The state court says, you're right, this is invalid. Let's say that that's binding on no one and the neuro-repair goes in and they file an infringement case. Of course the defendant is going to take that judgment, be it binding or not. They don't know what to do with it though. Should we just take the state court? We could probably convince the federal court otherwise. What if the federal court says it's not invalid? And now we have two courts saying a different thing about the validity of the same patent. I don't know what the USPTO would do. It certainly would have to be disclosed to them. Would it influence them? Perhaps. Would it bind them? Probably not. But I think that's the whole problem we have here is that there would be so much inconsistency. And again, I think there's no distinction between this case and Jang unless you want to say that it's malpractice. But in my view, that's merely a construct. I mean, you can't say malpractice claims are different for some reason that's given in Gunn. It doesn't exist. Jang said, backward looking, that Jang talks about the substantiality of it on a state law claim where invalidity is in question. And I'd also note that because Gunn never dealt with or discussed a case like this one, which is where it actually interfered, I mean, that point can't be overstated. I filed the motion I've just told you about saying this is an invalid patent and therefore my client didn't cause harm. And the USPTO issued the patent. We went into the magistrate to say, what do we do now? Did you argue that the patent is invalid to the district court? Yes. I thought what you argued was the claims that you had been prosecuting at the moment that NAAP had been in charge of the cases those application claims were not patentable but then ultimately a patent issued. And so you didn't and then you withdrew the motion. So at no point did you ever argue that the issued patent claims are no good. You're right. My distinction is poor as a non-patent lawyer. We argued that the claims weren't patentable. It's probably a better way of arguing. Withdrew it. Once they were issued we then argued again the same causation principle in our second MSJ. So invalid I think you're right. I think I used the wrong phrase. Unpatentable would probably be better. And were you arguing that the claims that they existed at the time that NAAP law group was prosecuting the claims were correctly rejected? That's correct. But then those claims were ultimately amended. Yes. So what actually issued is a different claim scope than what you had been prosecuting. True. So then I mean there's kind of a mismatch here. What's your argument on causation? That the issued patent claims which are amended and have a different scope than what you were actually prosecuting is invalid or that the claims that you were actually prosecuting at the time were correctly rejected. Do you understand my distinction? I do. And we argued both. Before anything had issued we argued that the claims in this patent which was what we were prosecuting were not patentable. Then the claims issued we withdrew our MSJ. The claims were amended and then those amended claims were issued. Exactly. Thank you. While this case is ongoing then we withdrew our MSJ and we filed a second summary judgment motion saying again the lack of causation wasn't that my client erred. It was that NeuroRepair would not allow my client to amend the claim the way they ultimately did. Right. So you never argued below that the issued patent claims were invalid. True. Your time is running out but I just want to know why it is that patent is so important to the core of this case. You came here as a non-patent lawyer. Who knows is the bottom line Your Honor. I do actually have some a little bit of patent background but so little as to be sad but I did a legal law practice claim with intellectual property at our firm. Anyway I did thank you for that Your Honor because I do want to bring one last point that I think is important that you opened with which is the standing issue which is on equal footing or perhaps even before the subject matter jurisdiction we've talked about. To talk first about the whole Why would standing be before the jurisdiction question we have in front of us. I think Your Honor To me it seems like you have to figure out the right court to figure out whether the plaintiff has standing. Except that you can't hear it and you can't hear it. So they're really They don't want to hear in the first place. I mean how is that appropriate for you to get removed to federal court but the federal court can't hear it because there's no Article 3 standing when they may very well have standing in state court. Well first they don't because the issue here was not Well that's not our call to make though. Fair enough but I'm just saying because you didn't suffer harm means there's no court to go to. I'm going to give you another 10 seconds. Thank you. The standing issue is on equal footing because they both relate to the entrance to the courthouse door. The cases like Roegast from the Supreme Court tend to suggest you can go with the easier one standing is that and so therefore we request it to be affirmed. Thank you counsel. Mr. Clipstein you've got four and a half minutes left but I'm going to add another minute because your opposing counsel ran over so we're going to set it at five and a half. Thank you your honor. From what I can understand of opposing counsel's argument your honor the argument made by defendants is almost entirely hypothetical. It's a hypothetical that is of course not this case nor is it even reasonably analogous to this case. To even get to their hypothetical argument defendants necessarily ignore the well pleaded complaint rule. This court certainly doesn't need to be reminded what that rule is but I think it was nicely stated recently in a case from the Eastern District of Kentucky in Dillion versus Medtronic at 992 F Sub Second 750 Y and I quote the well pleaded complaint rule clearly carries several important implications. First and foremost a federal issue must be among those Mr. Clipstein Hello Hold that at four and a half. I hate this technology. Hi this is Laurie. We're going to connect you again. We don't know how that got cut off. Thank you. Thank you. Mr. Clipstein Mr. Clipstein you got cut off you have four and a half minutes left and you were in the middle of reading about a well pleaded complaint. Yes sir. Your Honor I apologize. I don't know who lost whom but apparently my craze for modern telephony was premature. Just go ahead. The quote from Dillion versus Medtronic is the well pleaded complaint rule carries several important implications. First and foremost a federal issue must be among only those allegations in the complaint necessary for the plaintiff to state a claim. Necessarily defendants ignore this rule to get to their hypothetical arguments and the hypothetical pervades both the answer brief and the oral arguments presented by opposing counsel. In the answer brief beginning at page 22 I believe defendants talk about what would have happened or could have happened if the district court had considered the issue of patentability which it never did because it wasn't raised and had ruled that the patents were not that the applications were not patentable before the USPTO ultimately ruled and issued four patents and that's something that I think is crucial here. Defendants repeatedly gloss over the fact that in fact four patents had issued from exactly the application that defendants here were supposedly prosecuting. Defendants counsel don't make too much of the fact that there have been several patent lawyers involved in this matter. That's because the invention began at the University of California which uses its own lawyers. When NeuroRepair acquired the intellectual property from the university of course it hired different lawyers. So we have different lawyers all prosecuting from the same application that was originated by counsel for the University of California. Were the Mr. Clipstein, were the defendants below the first firm you hired? Yes, Your Honor, they were. Okay, thank you. The defense rate applied to defendants counsel this morning seems to me to be a very odd one. Reduced to its essence as I understand it, what he's saying is we're not guilty of the malpractice alleged because we're actually guilty of another form of malpractice. It's not our fault that we never got patents because the IP wasn't patentable. Again, ignoring that four patents have issued. What we are guilty of is having spent two years and over $200,000 of plaintiff's money prosecuting applications that we knew or believed were not patentable. But we never said that to the plaintiffs. There's no allegation or assertion from the defendants that I know of that they ever said to anyone at Neural Repair that they really should just go home and forget about this. Your IP isn't patentable. Don't waste your money. Instead, what they did was repeatedly say you are absolutely going to get patents in this case. We have no doubt about it. You're getting closer every day. We're almost there. Just keep paying the bills and we'll get your patents soon. There are numerous emails in the record and I can point to some of them if the court wishes from Mr. Kogan to that effect. Mr. Clipsie, you've got 30 seconds to wrap up. With that, Your Honor, I would say that the real issue here isn't the patent. It's not whether this is backward looking, forward looking, or sideways looking. The issue is the well-fitted complaint rule. And that is either satisfied for purposes of federal jurisdiction or it is not. And here it is not. If one looks at the complaint, there isn't a hint of a federal question in it. Last thought. I think that's it, Your Honor. In conclusion, I would say Gunn v. Minton, Gunn v. Minton. Okay. Thank you, counsel.